Exhibit 1

STATE OF MINNESOTA

DISTRICT COURT

COUNTY OF RAMSEY

SECOND JUDICIAL DISTRICT
CASE TYPE: Personal Injury

Court File No. _____
Judge: _____

Margarita Davison, individually and as parent
and natural guardian of J.T., a minor,

Plaintiff,

**SUMMONS**

vs.

Exavir Dwayne Binford, Jr. and
the City of St. Paul,

Defendants.

**RECEIVED**

**JAN 17 2024**

**CITY CLERK**

THIS SUMMONS IS DIRECTED TO **THE CITY OF ST. PAUL**.

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail **a written response,** called an Answer, to the person who signed this summons within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at 100 South 5th Street, Suite 1500, Minneapolis, MN 55402-1254.

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal

assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

      6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

 

                      **BASSFORD REMELE**
                      *A Professional Association*

Date: January 17, 2024        By: /s/ Andrew L. Marshall
                      Andrew L. Marshall (#176849)
                      Kyle S. Willems (#0395742)
                      Bryce D. Riddle (#398019)
                      100 South 5th Street, Suite 1500
                      Minneapolis, MN 55402-1254
                      Telephone:    (612) 333-3000
                      Facsimile:    (612) 333-8829
                      amarshall@bassford.com
                      kwillems@bassford.com
                      briddle@bassford.com

                      *Attorneys for Plaintiff*

STATE OF MINNESOTA            DISTRICT COURT

COUNTY OF RAMSEY          SECOND JUDICIAL DISTRICT

                                           CASE TYPE:  Personal Injury

---

Margarita Davison, individually and as parent
and natural guardian of J.T., a minor,

         Plaintiff,

vs.

Exavir Dwayne Binford, Jr. and the
City of St. Paul,

         Defendants.

Court File No.:
Judge:

**COMPLAINT**

---

Margarita Davison ("Ms. Davison"), individually and as the parent and natural guardian of

her minor child J.T. ("J.T.") ("Plaintiff"), for her Complaint against Defendants Exavir Dwayne

Binford, Jr. ("Binford") and the City of St. Paul (the "City"), states and alleges as follows:

## INTRODUCTION

1.      On the afternoon of January 18, 2023, J.T. and some of his friends were at the City's

Jimmy Lee Recreation Center (the "JLRC"). A young woman got into a dispute with Binford –

who was working as the City's employee in charge of the JLRC. The dispute escalated and J.T.

stepped in to defend the young woman. Binford took out a pistol and shot J.T. in the forehead.

Remarkably, J.T. survived the incident but he was permanently and severely injured.

2.      Binford's employment file reveals that the City knew he had a history of violent

conduct and threats towards minors while working at the City's recreation centers, including

physical altercations and threats that he would shoot children. Despite this, the City did not

terminate Binford's employment.

3.     This is an action for money damages arising in part from violations on January 18, 2023 of J.T.'s well-established constitutional rights by City employee Binford while he acted in the course and scope of his employment and under color of law at the Recreational Center. The violations resulted in J.T. being shot in the head and suffering a traumatic brain injury.

4.     Plaintiff not only brings constitutional claims against Binford, but also alleges that the City is liable for J.T.'s injuries pursuant to *City of Canton v. Harris*, 489 U.S. 378 (1989) because the City's policies and governmental customs reflect an indifference to the rights of citizens to be free from excessive use of force and were moving forces behind the constitutional violations suffered by J.T.

5.     Plaintiff further asserts state law claims against Binford and the City arising from the harm inflicted on J.T.

## PARTIES, JURISDICTION, AND VENUE

6.     Ms. Davidson and J.T. are residents of Ramsey County, Minnesota.

7.     At the time of the shooting that is the subject of this action, J.T. was 16 years old and a sophomore at Central High School, in St. Paul, Minnesota. He and his friends regularly visited the JLRC after school to play sports and socialize.

8.     At all times material to the allegations herein, Binford has been a citizen of the United States, a resident of the state of Minnesota, and the City's employee/agent.

9.     Defendant City of St. Paul is an incorporated city and political subdivision of the State of Minnesota, organized and existing under and by virtue of the laws of the State of Minnesota. The City maintains and operates St. Paul's Department of Parks and Recreation, including the JLRC.

2

10.     Plaintiff brings this action under state law as well as 42 U.S.C. §§ 1983 and 1988, the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a).

11.     This Court has personal jurisdiction over all Defendants because the acts and omissions of the Defendants alleged herein occurred within Ramsey County, Minnesota.

12.     Venue is proper because the events giving rise to the claims alleged herein occurred within Ramsey County, Minnesota.

## FACTUAL BACKGROUND

**A.      The Jimmy Lee Recreation Center and Its Relationship with the City of St. Paul.**

10.     The JLRC offers year-round activities, programs, and events for the community to enjoy, including educational programs, after school activities, fitness center memberships, youth and adult athletics, field rentals, and rental space for parties, meetings, and events. The JLRC promotes itself as a safe recreational space for children and young adults.

11.     JLRC employees are employed by the City, which is responsible for their hiring, training, and oversight.

12.     Because the JLRC's employees work for the City, the City has strict policies, practices and resources pertaining to public safety, training and discipline, and systems for support that govern the conduct of the JLRC's employees.

13.     The City grants the JLRC's employees the authority to police the Center, including but not limited to opening and closing the premises, barring individuals from entering the premises, locking buildings down due to safety concerns, enforcing rules and regulations, preventing and breaking up altercations, and directing activities hosted by the JLRC. This includes employing the use of force.

3

**B.** **Binford's Employment with The City and His History of Complaints.**

13.    In approximately 2018, The City's Parks and Recreation hired Binford to work as the "Community Recreation Leader" at the Arlington Hills Community Center located at 1200 Payne Ave, St. Paul Minnesota 55130.

14.    As Binford's employer, the City was responsible for the hiring, training, and oversight of Binford.

15.    Over the course of his employment, Binford exhibited a pattern of violent behavior and conduct that the City was aware of and which required corrective action.

        **1.**    **Binford Gets in Physical Altercation While Working at the Arlington Hills Community Center.**

16.    On December 3, 2019, Binford was involved in an argument with a visitor at the Arlington Hills Community Center. The argument escalated into a physical altercation when Binford punched the visitor several times.

17.    After the December 3, 2019 altercation, Binford told the City's internal investigators that the visitor said he had a weapon. Of note, Binford put in a written statement that "I didn't really know if he had a firearm as he claimed so I reacted out of self-defense in fear of my safety as well for the others."

        **2.**    **Instead of Terminating Binford's Employment, the City Inadequately Reprimands Him with a Five-Day Suspension.**

18.    Instead of terminating Binford's employment, the City gave him a five-day suspension for his actions on December 3, 2019 and told him his decisions "have the potential to put other recreation center participants, visitors and staff at risk of bodily harm."

19.    Upon information and belief, the City instructed Binford that he was not to resort to violence as a means of de-escalating situations. Binford was required to comply with this

4

directive. The City did not provide any additional conflict resolution training to recreation center employees, including Binford.

### 3.    The City Transfers Binford to the JLRC and Promotes Him.

20.    In August 2022, the City transferred Binford to the JLRC and promoted him to the position of Community Relations Specialist.

21.    "Community Relations Specialists" are the lead point of contact within the City's recreation centers for programs and day-to-day operations, engagement of young people, and overseeing all rec center functions. Binford was, in essence, the JLRC's manager while he was on duty.

### 4.    Binford Makes Threats of Gun Violence That Were Not Investigated by The City.

22.    Shortly after being transferred to the JLRC, in October 2022, the mother of a minor child warned the City that Binford had threatened her daughter.

23.    The woman told the City that Binford, while working in his role as the JLRC's Community Relations Specialist, threatened to shoot her 17-year-old daughter and some of her daughter's friends following a disagreement on October 13, 2022. Specifically, the woman stated "[Binford] started threatening them, said he wanted to kick them out of the rec center, and then he went on and threated to shoot them." "His exact words were, 'I will Swiss cheese y'all,' which to my knowledge that means he was going to put multiple holes in them. He was going to shoot them."

24.    Shortly after the October 13, 2022 incident, the woman notified the City of Binford's actions. She never received a response from the City.

25.    Despite the City's knowledge of Binford's threatening behavior, no investigation or corrective action was taken by the City against Binford for his conduct.

5

26.     The City had a policy forbidding employees from carrying firearms, yet the City never checked to see whether Binford was carrying a firearm while at the JLRC and thus capable of carrying out his threat to shoot minors.

**C.     Binford Shoots J.T.**

27.     On January 18, 2023, the JLRC staff received a call from nearby St. Paul Central High School informing them that there had been problems at the school that day, and staff was put on notice.

28.     Later that afternoon, a group of young women got into a fight in the JLRC's parking lot. Due to the fight, no one was allowed to enter the JLRC per a City policy that governs the JLRC.

29.     Binford enforced the policy and ordered the JLRC doors to be locked and told everyone outside the JLRC to leave.

30.     While some students stayed outside in the parking lot, a young woman who was inside the Recreation Cener at the time the altercation broke out received permission from a staff member to let her cousin come into the JLRC from the parking lot.

31.     Upon discovering this, Binford became angry and began yelling at the young woman who let her cousin in.

32.     Using demeaning and derogatory language, Binford yelled at the young woman and accused her of undermining the authority given to him by the City.

33.     According to witness accounts, Binford began calling the young woman derogatory names.

34.     J.T. and another young man then stepped in to protect the young woman. A witness heard Binford say "If I got to kill somebody I will. I don't give a fuck."

6

35.     Feeling threatened, the two young men and the young woman got into a brief altercation with Binford (the "Altercation").

36.     After Binford and the young men had separated, with no indication that the young men possessed weapons, and without any justification, Binford pulled out his gun and shot J.T. in the head (the "Shooting"). Binford then fled the scene and was arrested a short time later.

**D.      J.T. Miraculously Survives the Shooting, But It Leaves Him Permanently and Severely Injured.**

37.     At approximately 4:15 p.m. on January 18, 2023, police officers were sent to the JLRC to respond to a shooting.

38.     Upon arriving at the scene of the Shooting, officers found J.T. suffering from a gunshot wound to his forehead. Paramedics gave emergency aid to J.T. and rushed him to the hospital for emergency medical treatment.

39.     J.T. underwent numerous surgeries and other emergency care.

40.     Because J.T. was shot in the head, he has sustained serious and permanent injuries that will affect every aspect of his life – including but not limited to his physical and cognitive functions, his ability to work and hold a job, his ability to maintain relationships, and his ability to carry out basic day-to-day functions, and otherwise enjoy a "normal" and fulfilling life.

**D.      The City's Knowledge of Increasing Conflicts at Recreation Centers and Failure to Adequately Train Its Employees How To Handle Such Situations.**

41.     In addition to the City's knowledge of Binford's violent tendencies and threats of gun violence at more than one of the City's recreation centers, the City was also aware that conflicts at recreation centers—particularly following school dismissal—had been occurring for some time. *See*   https://www.twincities.com/2023/01/23/st-paul-rec-center-employee-accused-in-shooting-suspended-in-2019-melvin-carter-says/.

7

42.     Despite having knowledge of the significant threats that gun violence poses to recreation center visitors, the City failed and continues to fail to train its employees on how to deescalate violent situations without resorting to the excessive use of force.

43.     The City also had a policy of inadequately disciplining employees and simply shuffling them around within the City, even though they presented a known risk of harm to the public and other City employees.

## COUNT I – 42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATIONS

*Plaintiff v. Binford, Individually and in His Official Capacity*

55.     Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

56.     Binford's conduct described above, and specifically shooting J.T., constitutes excessive and deadly force in violation of the Fourth Amendment of the United States Constitution and clearly established law.

57.     At all material times, Binford was acting under color of City law, as the City's agent, and within the scope of his employment and authority as the Community Relations Specialist that the City put in charge of the JLRC.

58.     At all material times, Binford had no reason to believe that J.T. was armed.

59.     At all material times, Binford did not have a reasonable fear of imminent bodily harm after the Altercation had broken up, nor did Binford have a reasonable belief that any other person was in danger of imminent bodily danger from J.T. at or around the time of the Altercation.

60.     Every reasonable Community Relations Specialist who would have been in Binford's position at or near the time of the Altercation would have known that using deadly force against an unarmed young man who ceased engaging in an altercation constitutes excessive force in violation of the Fourth Amendment.

8

61.     Binford's use of deadly force in shooting J.T. was objectively unreasonable and violated clearly established law.

62.     Binford acted with malice, intentionally committing an act that he knew was legally prohibited.

63.     As a direct and proximate result of Binford's excessive, illegal, and deadly use of force, J.T. experienced disability, pain, suffering, and devastating physical, cognitive and emotional injuries, some of which are permanent.

64.     As a direct and proximate result of the acts and omissions described herein, J.T. sustained damages in an amount in excess of $50,000, the exact amount to be determined at trial.

65.     As a direct and proximate result of these wrongful acts and omissions, Ms. Davidson, in her individual capacity, has suffered pecuniary loss, including but not limited to significant medical expenses, as well as the loss of aid, comfort and support of her child, J.T., in an amount in excess of $50,000, the exact amount to be determined at trial.

66.     Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT II – 42 U.S.C. § 1983 – *CANTON LIABILITY*

### *Plaintiff v. City of St. Paul*

67.     Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

68.     The City failed to properly train or modify its training for Binford and other City recreation center employees, including but not limited to, matters related to the reasonable and appropriate use of force in quelling altercations that arise at recreation centers.

9

69. Quelling altercations is a usual and recurring situation of which the City had actual knowledge and which recreation center employees, including Binford, and other City employees encountered on a regular basis.

70. As such, the City was aware of a need for more and different training for its recreation center employees. The City specifically knew that the JLRC employees and other recreation center employees, including but not limited to Binford, needed training regarding the use of force and violence de-escalation techniques and was required to provide its employees with such training.

71. The City also specifically knew that its JLRC employees and other recreation center employees, including but not limited to Binford, needed specific training on handling violent situations that employees were involved in.

72. The City was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training. This includes, but is not limited to, the City's knowledge of incidents involving Binford that preceded the Shooting.

73. The City received notice of a pattern of unconstitutional acts committed by Binford, namely assaults or threats of assault on minors.

74. The City was aware that Binford had threatened to shoot a minor, but never ascertained whether Binford was carrying a firearm while working in the course and scope of his employment at the JLRC.

75. Consistent with its policy of inadequate discipline and simply moving employees who presented a risk of committing constitutional violations to a different position or recreation center, knowing of Binford's violent propensities, the City moved Binford to the JLRC, where they knew he would be in contact with minors, such as J.T.

10

76.     Moving employees likely to commit constitutional violations from one location to another after illegal conduct had been demonstrated constituted an official City policy, practice or custom.

77.     The City was deliberately indifferent to, tacitly authorized and exhibited reckless disregard for the violation of constitutional rights.

78.     The City failed to take sufficient remedial action and its inaction constituted a policy.

79.     The failure to train and/or to appropriately modify training constituted official City policies, practices, or customs.

80.     The City's failure to train and/or to appropriately modify training facilitated Binford's use of deadly force on J.T.

81.     The City's transfer of Binford to the JLRC and its continued employment of Binford at the JLRC after he demonstrated violent propensities against minors facilitated Binford's use of deadly force on J.T.

82.     As a direct and proximate result of the City's acts and omissions, J.T. sustained disability, pain, suffering, and devastating physical, cognitive and emotional injuries, some of which are permanent.

83.     As a direct and proximate result of the acts and omissions described herein, J.T. sustained damages in an amount in excess of $50,000, the exact amount to be determined at trial.

84.     As a direct and proximate result of these wrongful acts and omissions, Ms. Davidson, in her individual capacity, has suffered pecuniary loss, including but not limited to significant medical expenses, as well as the loss of aid comfort and support of her child, J.T., in an amount in excess of $50,000, the exact amount to be determined at trial.

11

85.     Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT III – RESPONDEAT SUPERIOR LIABILITY, MINN. STAT. § 466.02

*Plaintiff v. City of St. Paul*

86.     Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

87.     This cause of action relates to Binford's failure to comply with the City's directive that he not use violence to de-escalate conflicts.

88.     Following Binford's suspension in 2019, the City informed Binford that his actions had "the potential to put other recreation center participants, visitors and staff at risk of bodily harm."

89.     The City instructed Binford to not use violence to de-escalate conflicts.

90.     The City instructed Binford that he could not carry a firearm while working at the JLRC or other recreation centers.

91.     This directive was given in furtherance of Binford's employment duties and related to the operation of the City's recreation centers.

92.     Binford did not have discretion as to whether he could comply with the City's directives. He was required to do so.

93.     Despite being required not to use violence to de-escalate conflicts, Binford resorted to violence when he shot J.T.

94.     Despite being prohibited from carrying a firearm while working at the JLRC, Binford had a pistol with him on the date of the incident described herein.

95.     At the time Binford shot J.T., he was acting in his official capacity as the City's Community Relations Specialist in charge of the JLRC.

12

96.     Binford's actions were made pursuant to his duties as the City's Community Relations Specialist in charge of the JLRC.

97.     Binford's actions were done in furtherance of his duties as Community Relations Specialist.

98.     Binford's conduct was within the time and place constraints of his employment with the City as the Community Relations Specialist that it put in charge of the JLRC.

99.     Binford is not entitled to Official Immunity in shooting J.T.

100.    Consequently, the City is also not entitled to Official Immunity based on Binford's actions.

101.    As a direct and proximate result of the conduct described above, J.T. sustained disability, pain, suffering, devastating physical, cognitive and emotional injuries, some of which are permanent.

102.    As a direct and proximate result of the acts and omissions described herein, J.T. suffered damages in an amount in excess of $50,000, the exact amount to be determined at trial.

103.    As a direct and proximate result of these wrongful acts and omissions, Ms. Davidson, in her individual capacity, has suffered pecuniary loss, including but not limited to significant medical expenses, as well as the loss of aid comfort and support of her child, J.T., in an amount in excess of $50,000, the exact amount to be determined at trial.

## COUNT IV – ASSAULT

*Plaintiff v. Binford, Individually and in His Official Capacity*

94.     Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

95.     Binford acted with the intent to cause apprehension or fear or immediate bodily harm to J.T. when he pulled out his gun and shot J.T.

13

96.     Binford had the ability to cause bodily harm to J.T. based upon the fact that he had a gun and intended to use it.

97.     J.T. had a reasonable apprehension or fear that immediate harm would occur based upon the fact that Binford brandished and pointed a gun at him.

104.     As a direct and proximate result of the assault described herein, J.T. sustained disability, pain, suffering, and devastating physical, cognitive and emotional injuries, some of which are permanent.

105.     As a direct and proximate result of the acts and omissions described herein, J.T. suffered damages in an amount in excess of $50,000, the exact amount to be determined at trial.

98.     As a direct and proximate result of these wrongful acts and omissions, Ms. Davidson, in her individual capacity, has suffered pecuniary loss, including but not limited to significant medical expenses, as well as the loss of aid comfort and support of her child, J.T., in an amount in excess of $50,000, the exact amount to be determined at trial.

## COUNT V – BATTERY

*Plaintiff v. Binford, Individually and in His Official Capacity*

99.     Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

100.     Binford intentionally caused harmful bodily contact with J.T. without consent when shot J.T. in the head.

101.     Binford intended to shoot, and did in fact shoot, J.T.

102.     As a direct and proximate result of the City's acts and omissions, J.T. sustained disability, pain, suffering, and devastating physical, cognitive and emotional injuries, some of which are permanent.

14

103.    As a direct and proximate result of the acts and omissions described herein, J.T. suffered damages in an amount in excess of $50,000, the exact amount to be determined at trial.

104.    As a direct and proximate result of these wrongful acts and omissions, Ms. Davidson, in her individual capacity, has suffered pecuniary loss, including but not limited to significant medical expenses, as well as the loss of aid comfort and support of her child, J.T., in an amount in excess of $50,000, the exact amount to be determined at trial.

### DEMAND FOR JURY TRIAL

105.    Plaintiff hereby demand a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an order for judgment from this Court against Defendants, jointly and severally, as follows:

1.    Awarding Plaintiffs actual and consequential damages in excess of $50,000 in an exact amount to be proven at trial;

2.    Awarding Plaintiffs their attorneys' fees, costs, and disbursements, together with pre-and post-judgment interest as permitted by law, including but not limited to an award of costs, disbursements, and fees under 42 U.S.C. § 1988; and

3.    Awarding Plaintiffs all other such relief as this Court may deem just and equitable.

15

**BASSFORD REMELE**
*A Professional Association*

Date: January 17, 2024

By: /s/ Andrew L. Marshall
Andrew L. Marshall   (#176849)
Kyle S. Willems        (#0395742)
Bryce D. Riddle        (#398019)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone:    (612) 333-3000
Facsimile:     (612) 333-8829

*Attorneys for Plaintiffs*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

**BASSFORD REMELE**
*A Professional Association*

Date: January 17, 2024

By:   /s/ Andrew L. Marshall
Andrew L. Marshall   (#176849)
Kyle S. Willems        (#0395742)
Bryce D. Riddle        (#398019)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone:    (612) 333-3000
Facsimile:     (612) 333-8829

Attorneys for Plaintiffs

16